UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JUANA LIDIA ZAPATA,<br><br>        *Plaintiff*,<br><br>-against-<br><br>COMMISSIONER OF SOCIAL SECURITY,<br>        *Defendant*. | 22-cv-05544 (ALC)<br><br><u>OPINION & ORDER</u> |

**ANDREW L. CARTER, JR., United States District Judge:**

   Plaintiff Juana Lidia Zapata, ("Plaintiff," "Claimant" or "Ms. Zapata") brings this action challenging the Commissioner of Social Security's (the "Commissioner" or "Defendant") final decision that Plaintiff was not entitled to disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"). Before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). ECF Nos. 16, 18. Upon review of the parties' submissions and for the reasons stated below, Plaintiff's motion is **DENIED**, and Defendant's cross-motion is **GRANTED**.

BACKGROUND

**I.  Procedural Background**

   On June 11, 2018, Ms. Zapata filed an application for Title II disability insurance benefits in connection with a disability allegedly beginning on October 17, 2017. R. at 105.[1] On or around June 11, 2018, Ms. Zapata also filed a Title XVI application for supplemental security income. R. at 106, 108, 327. The Social Security Administration ("SSA") denied Plaintiff's claims on July 18, 2018. R. at 106. Thereafter, Ms. Zapata filed a written request for a hearing

---

[1] "R." refers to the Certified Administrative Record prepared by the Social Security Administration. ECF No. 10. Pagination follows original pagination in the Certified Administrative Record.

before an Administrative Law Judge ("ALJ") on August 17, 2018. *Id.* On July 25, 2019, ALJ Sheena Barr held a video hearing. *Id.* Ms. Zapata was represented by her attorney Christopher D. Latham. *Id.* Vocational Expert ("VE") Irene H. Montgomery also appeared at the hearing. *Id.*

On October 2, 2019, ALJ Barr issued a decision denying Plaintiff's claim, finding that Plaintiff was not disabled under Sections 216(i), 223(d) and 1614(a)(3)(A) of the Social Security Act. R. at 114. Plaintiff filed an appeal of the ALJ's decision to the SSA Appeals Council. R. at 121. Her request for an appeal was granted on July 23, 2020. R. at 123-124. The Appeals Council granted the request for review under the substantial evidence provision of the Social Security Administration regulations (20 C.F.R. §§ 404.970, 416.1470). *Id.* Under the authority of 20 C.F.R. §§ 404.977 and 416.1477, the Appeals Council vacated the hearing decision and remanded the case to ALJ Brian G. Kanner for resolution. *Id.* The Appeals Counsel directed ALJ Kanner to:

- Give further consideration to the medical source opinion(s) pursuant to the provisions of 20 CFR 404.1520c and 416.920c. As appropriate, the Administrative Law Judge may request the medical sources to provide additional evidence and/or further clarification of the opinions (20 CFR 404.1520b and 416.920b). The Administrative Law Judge may enlist the aid and cooperation of the claimant's representative in developing evidence from the claimant's medical sources.
- Obtain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Ruling 83-14). The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404.1566 and 416.966). Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

*Id.* A supplemental hearing was held on October 8, 2020. R. at 18. VE Sally St. John testified at the supplemental hearing. *Id.*

On November 30, 2020, the Commissioner via ALJ Kanner decided that Ms. Zapata was not entitled to disability insurance benefits. R. at 29. Plaintiff filed a request for review with the Appeals Council and her request was denied on April 29, 2022. R. at 1.

Plaintiff filed this civil action on June 29, 2022. ECF No. 1. Plaintiff moved for judgment on the pleadings on January 19, 2023 pursuant to Rule 12(c) of the Federal Rules of Civil Procedure and submitted a memorandum of law in support of her motion ("Pl. Mot."). ECF Nos. 15-16. On March 23, 2023, Defendant cross-moved for judgment on the pleadings and an opposition to Plaintiff's motion for judgment on the pleadings ("Def. Opp."). ECF No. 18. On March 20, 2023, Plaintiff submitted a reply memorandum of law in support of her motion ("Pl. Reply"). ECF No. 19. The Court now considers the parties' motions.

## II.     Factual Background

Plaintiff was born on August 27, 1975, was 42 years old at the onset of the alleged disability on October 17, 2017, and was 43 years old at the time of the July 25, 2019 hearing. R. at 27, 42. Ms. Zapata's two children ages 12 and 15 lived with her. R. at 49. Ms. Zapata has completed a high school education. R. at 118. Her education stopped after one year in college in 1999. R. at 43-44, 373. Plaintiff has held several jobs assisting patients from 2000 to 2017. R. at 373. Ms. Zapata has not worked since the date she claimed her alleged disability, October 17, 2017. R. at 45. Her disability stemmed from an incident in April of 2017 where she sustained left shoulder, back and neck injuries after lifting a heavy patient while working as a home health aide. R. at 462.

      a.  **Non-Medical Evidence**

          i.  **Disability Report**

On June 14, 2018, Plaintiff submitted a disability report. R. at 369. It listed that Plaintiff had issues with her back and left arm, and that she took the medications Cyclobenzaprine and Naproxen for pain. R. at 374.

          ii.  **Vocational Expert's Testimonial Evidence**

At the supplemental hearing before ALJ Kanner on October 8, 2020, VE Sally St. John testified. R. at 53. She explained that Ms. Zapata's occupation as a home health aide had a "medium" exertional level and a Specific Vocational Preparation ("SVP") of 3. R. at 60. An SVP is the amount of time required for a claimant to learn and develop the facility needed for average performance in a job. She opined a person of claimant's age, education, and work history with a residual functional capacity to perform the full range of work at the light exertional level, that can occasionally lift up to ten pounds and frequently lift five pounds, and can occasionally climb, stoop, crouch, crawl, and kneel, could not perform Ms. Zapata's past work history. R. at 60-61. The work Ms. Zapata had done in the past was in the medium exertional category and involved heavier lifting and heavier reaching. R. at 61. VE St. John testified that a person with such limitations could be a document preparer, a "parimutuel ticket checker" and an order clerk. R. at 61-70. She stated that a person of the same limitations plus no ability to use the left arm could still perform these jobs. R. at 70.

Ms. Zapata's attorney then asked the VE to consider whether a claimant with the following limitations could perform the jobs she had previously listed: occasionally feeling, handling, could never reach, push or pull, was limited in working from unprotected heights, or with moving machinery. R. at 71. The VE testified they could not. R. at 70-73. However, if

claimant's restrictions applied only to her left arm, the VE testified that she may be able to perform the jobs of an order clerk and parimutuel ticket checker. R. at 78-79.

### b. Physical Health Medical Evidence

The Record contains evidence from several sources including Mount Sinai Hospital, Superior Medical Consultants, LLC, New York Spine Institute, New York Sports & Joints, and Physical Medicine & Rehabilitation of New York, P.C.

### i. Mount Sinai Hospital

Ms. Zapata was treated by Dr. Meyer at Mount Sinai Hospital in October 2017. Dr. Meyer reported claimant had mild tenderness in the neck. R. at 505-507. "There [was] full rotational motion of the neck in all directions" and "[n]o pain on the extremes of lateral flexion of the neck." R. at 528. On her left shoulder, she had positive Hawkins and Neer tests and a limited range of motion. R. at 505-507. Ms. Zapata's employer could not meet her accommodations / restrictions. R. at 511.

After claimant's shoulder surgery in February 2018, Ms. Zapata reported she had improved and reported "[m]uch less pain" in her left shoulder. R. at 515-516. Dr. Meyer also reported claimant's "hands exhibit a good grip strength" and had no sensory deficit. R. at 516.

By May 2018, Dr. Meyer reported claimant still had mild tenderness in her neck, and mild pain and some limited motion in her left shoulder. R. at 522. By July 2018, Dr. Meyer cleared Ms. Zapata "to work less active work (ie not as a HH/1 or-CNA with the lifting those jobs entail)." R. at 814. Ms. Zapata reported she continued to feel pain in shoulder "intermittent[ly] but 5/10 when it does get worse." *Id.*

In October 2018, claimant had mild to moderate tenderness in her left shoulder and continued to have a limited range of motion and to test positive in the Hawkins and Neer tests. R.

at 819. Dr. Meyer reported that she continued to require additional physical therapy "to enable increased strength and ROM" and had "been cleared for more modified duty with less physical exertion [especially] in arms[.]" *Id.*

In March 2019, Ms. Zapata continued to report shoulder pain "with some limitation in motion – still about 5/10 when it does get worse." R. at 830. Dr. Meyer prescribed a compression strap brace for her right elbow due to positive provocative tests R. at 830-831. In June 2019, Dr. Meyer reported not much changed from her prior visit. R. at 944-947.

In July 2019, Dr. Meyer determined Ms. Zapata could lift up to 10 pounds "occasionally (up to 1/3 of the time)" and could stand or walk for up to four hours total in one-hour intervals in an eight-hour workday. R. at 983. Dr. Meyer answered "no" on his form as to whether claimant's standing/walking, or sitting was affected by impairment. *Id.* Claimant could "never" climb or crawl[,]" but could "occasionally" bend, balance, stoop, crouch, and kneel. R. at 984. Ms. Zapata could never reach or push / pull, but she could occasionally feel / handle. *Id.* She had limited motion of her left arm. *Id.*

By September 2019, Dr. Meyer noted claimant had "[c]ontinued pain in shoulder but seems to be slowly improving. Still some limitation in motion – pain still about 4-5/10 when it does get worse." R. at 1025. She attended physical therapy for her shoulder thrice a week and it was "producing some improvement[.]" *Id.* Ms. Zapata continued to experience mild tenderness on her neck. R. at 1030.

In March 2020, Ms. Zapata begun to see Dr. Claudine Holt at Mount Sinai. R. at 1032. She continued to rate her pain as "5-6/10 in the neck and shoulder" and "[t]he pain is worse, with movement (reaching, lifting)." *Id.* Ms. Zapata received physical therapy twice a week for her neck and shoulders. *Id.* Dr. Holt reported no TTP on her neck, or spasms and her movement was

6

fluid, not stiff. R. at 1034. She tested negative for Spurling test and had full strength in her shoulder. *Id.* By September 2020, claimant was still off duty because there was no modified duty work available. R. at 1037.

### ii. Superior Medical Consultants, LLC

In December 2017, Dr. Ronald Mann, conducted an orthopedic examination of claimant. R. at 581. He stated that Ms. Zapata needed physical therapy for her left shoulder, "exhibit[ed] a mild (25%) degree of disability" and "may return to light duty work with restrictions of no overhead work." *Id.*

### iii. New York Spine Institute

Ms. Zapata was treated by Dr. Angel E. Macagno at the New York Spine Institute for her back and neck pain. R. at 482. Dr. Macagno reported that Ms. Zapata was positive for Spurling test on her left upper extremity and experienced weakness. *Id.* She had a positive Lasegue test on her left lower extremity. *Id.* Dr. Macagno anticipated an anterior cervical discectomy and fusion ("ACDF") 2 level if she did not improve. R. at 484.

In January 2019, Dr. Macagno reported claimant continued to complain of lower back and neck / arm pain. R. at 759. Claimant experienced "numbness and tingling of the left upper extremity[,]" tested positive for the Spurling test, and had 4/5 strength of her upper extremities. R. at 759-760. She tested positive for Laseque in her lower extremities. R. at 760. Dr. Macagno reported Ms. Zapata was a candidate for ACDF. R. at 759-761.

In April 2019, an MRI of her cervical spine revealed "[c]ervical spondylosis with multilevel ditic disease and neural foraminal narrowing[.]" R. at 1118-1119. In June 2019, Dr. Macagno performed an ACDF at C4-6. R. at 956-958.

In August 2019 and November 2019, Dr. Macagno reported that Plaintiff's neck pain was improving with current medication, but she still experienced back pain and a limited range of motion. R. at 1049, 1053. Dr. Macagno authorized her to return to computer training classes with spinal precautions. R. at 1057.

In February 2020, Ms. Zapata's pain persisted and Dr. Macagno determined she was a candidate for future lumbar surgery. R. at 1062. An x-ray of her cervical spine showed new mild retrolisthesis of C2 on C3 and exaggerated cervical lordosis. R. at 1069.

By July 2020, Ms. Zapata reported 3/5 strength in her left lower extremity and was positive for Lasegue test. R. at 1065. Dr. Macagno determined that she was able to perform "[l]ight duty jobs as tolerated" but was "not able to return back to [her] previous job." R. at 1067.

### iv. New York Sports & Joints

In December 2017, Ms. Zapata was treated by Dr. Kenneth McCulloch, an orthopedic surgeon at New York Sports & Joints for left shoulder pain. R. at 476. Dr. McCulloch reported a limited range of motion of her left shoulder and tenderness. *Id.* She tested positive for Neer, Hawkins, and O'Brien tests and reported weakness. *Id.* Dr. McCulloch recommended "left shoulder arthroscopic subacromial decompression and evaluation of possible repair of the rotator cuff and/or biceps as well as lysis of adhesions." R. at 477.

On February 8, 2018, Dr. McCulloch performed a left shoulder arthroscopic subacromial decompression on claimant. R. at 442. On June 2018, Dr. McCulloch reported the surgery had improved her left shoulder pain had had "some residual symptoms." *Id.* Ms. Zapata had "[g]ood strength" and "[n]o significant pain with Neer or Hawkins" tests. *Id.*

### v.  Physical Medicine & Rehabilitation of New York, P.C.

In November 2017, Ms. Zapata was treated by Dr. Gautam Khakhar of the Physical Medicine & Rehabilitation of New York, P.C. for her neck, back, and left shoulder pain. R. at 478. Ms. Zapata reported she could not sit and stand for more than 25-30 minutes. R. at 478. Dr. Khakhar reported she had a limited range of motion in her neck and left shoulder. R. at 479. Ms. Zapata had tenderness and spasms on her cervical spine, and was positive for Spurling test on the left of her cervical spine. *Id.* She had 4/5 strength in her left arm and leg. *Id.*

In January 2018, Ms. Zapata was treated by Dr. Derek C. Johnston by a subacromial corticosteroid injection performed on her left shoulder. R. at 606, 701-702.

In March 2018, Dr. Khakhar reported claimant rated her pain at 4/10. R. at 669. In March 2018 and May 2018, claimant reported her pain was worsened "with motion activity, turning, bending, lifting, reaching, difficulty with household chores, [and] sleeping[.]" R. at 502, 669. In March 2018, she reported she could not sit and stand for more than 45 minutes to an hour. R. at 669. In May 2018 she reported she could not sit and stand for more than an hour, she continued to have 4/5 strength in her left arm and leg, and did not experience sensory deficits. R. at 502-503.

In July 2018, Dr. Khakar stated Ms. Zapata "remain[ed] incapacitated from work in home care" and did not elaborate on her reasoning. R. at 888.

In August 2018, Dr. Johnston reported that claimant continued to experience neck and back pain, adding that it was "aggravated with flexion, extension, and rotation, as well as exertional tasks that require bending and stooping. She grade[d] the pain on average at 4-5/10 with exacerbations to 8/10." R. at 707. Ms. Zapata continued to report tenderness and a limited

9

range of motion in her neck and back. R. at 708. Ms. Zapata also stated that "other areas are starting to become more painful, such as her right hand and right hip." R. at 707.

By October 2018, claimant said her pain was still worsened "with motion activity" but had improved because she could sit and stand for three hours rather than one. R. at 918. Dr. Khakar against stated that Ms. Zapata "remain[ed] incapacitated from work in home care." R. at 920. In October 2018, Ms. Zapata underwent a cervical epidural steroid injection ("CESI") administered by Dr. Johnston. R. at 712.

By December 2018 and March 2019, Dr. Khakhar reported that claimant could not lift more than 20 pounds and "still ha[d] difficulty sitting and standing for prolonged periods of time." R. at 932, 940.

In November 2019 and July 2020, Dr. Khakhar determined that claimant still had a limited range of motion and had 4/5 strength. R. at 1004, 1009. By July 2020, Ms. Zapata continued to report her pain was "aggravated with any prolonged standing, sitting, twisting," etc. R. at 1008.

     **vi. SSA Consultative Examiner**

In August 2019, the consultative examiner, Dr. Saundra Nickens, examined Ms. Zapata. R. at 986. Ms. Zapata reported that her neck, back, and left shoulder pain was "intermittent, maximized at 8/10[.]" *Id.* Dr. Nickens reported that claimant had full grip strength and full range of motion and strength in her lower and upper extremities. R. at 988. Dr. Nickens stated "there was no objective physical or functional limitations noted during [the] evaluation." R. at 989. She reported Ms. Zapata could sit, stand, and walk for eight hours at one time during an eight-hour workday. R. at 991.

### c. The ALJ's Decision

Initially, applying the five-step sequential evaluation for adjudicating Social Security disability claims, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since October 17, 2017, the alleged onset date. R. at 21.

At step two, the ALJ found that Plaintiff had the following severe impairments: a partially torn rotator cuff in the left shoulder that required surgery in 2018; degenerative disc disease in the neck that required fusion surgery in 2019; and degenerative disc disease in the lumbar spine. *Id.* The impairments significantly limit the ability to perform basic work activities as required by SSR 85-28.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). *Id.* On February 8, 2018, claimant underwent left arthroscopic surgery with decompression, and the surgery "significantly diminished" claimant's shoulder pain. R. at 23. In March 2018, claimant had good grip strength. *Id.* In June 2019, claimant underwent an ACDF. R. at 25.

At step four, the ALJ found that Ms. Zapata:

> has the residual functional capacity ["RFC"] to perform to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that claimant can only occasionally use her left and non-dominant upper extremity for reaching in all directions; she can only occasionally lift up to ten pounds and frequently lift up to five pounds; and she can only occasionally climb, stoop, crouch, crawl and kneel.

*Id.* In making this determination, the ALJ considered whether there is an underlying medically determinable impairment that could reasonably be expected to produce Plaintiff's pain or other symptoms, as well as the intensity, persistence, and limiting effects of such pain or symptoms on work-related activities. R. at 21-27. The ALJ stated that the VE's testimony indicated that

11

claimant was unable to perform any past relevant work involving medium exertion, due to her narrowed range of light exertion. R. at 27. In July 2018, claimant was cleared to return to less active work. R. at 23.

At step five, the ALJ considered Plaintiff's age, education, work experience, and RFC, as well as the VE's testimony and the Medical-Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2. R. at 27-29. The ALJ concluded that there were a significant number of jobs in the national economy that Plaintiff could perform. *Id.* This includes jobs that could be performed primarily with one arm, such as a document preparer, a ticket checker, and an order clerk. R. at 28. The ALJ therefore found that Plaintiff was not disabled within the meaning of the Act. R. at 28-29.

## LEGAL STANDARDS

### I. Standard of Review

A district court reviews a Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c)(3) to determine whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard. *Talavera v. Astue*, 697 F.3d 145, 151 (2d Cir. 2012). "Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (internal quotation marks omitted). The substantial evidence standard means that once an ALJ finds facts, a district court can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis in original) (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994)) (internal quotation marks omitted). In other words, this Court must afford the Commissioner's determination considerable deference, and may not

"substitute its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991) (internal citation and quotation marks omitted).

## II. Determining Disability

A disability, as defined by the Social Security Act, is one that renders a person unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); accord 42 U.S.C. § 1382c(a)(3) (A). Further, "[t]he impairment must be 'of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.'" *Shaw v. Chater*, 221 F.3d 126, 131-32 (2d Cir. 2000) (quoting 42 U.S.C. § 423(d)(2) (A)).

## III. Commissioner's Five-Step Analysis of Disability Claims

The Commissioner uses a five-step process to determine whether a claimant has a disability within the meaning of the Social Security Act. 20 C.F.R. § 404.1520(a)(4). The Second Circuit describes this process:

> (1) First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity.
> (2) If he is not, the Commissioner next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.
> (3) If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Commissioner will consider him *per se* disabled.
> (4) Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe

> impairment, he has the residual functional capacity to perform his past work.
> (5) Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform.

*Selian v. Astrue*, 708 F.3d 409, 417–18 (2d Cir. 2013) (alterations omitted). At step three, the Commissioner may determine whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii); *see also id.* § Pt. 404, Subpt. P, App'x 1.

"The claimant has the general burden of proving that he or she has a disability within the meaning of the Act, and bears the burden of proving his or her case at steps one through four." *Id.* at 128 (internal citations omitted). At step five, however, "the burden shifts to the Commissioner to show that there [are] a significant number of jobs in the national economy that [the claimant] could perform based on his residual functional capacity, age, education, and prior vocational experience." *Butts v. Barnhart*, 388 F.3d 377, 381 (2d Cir. 2004) (citing 20 C.F.R. § 404.1560), *amended on reh'g*, 416 F.3d 101 (2d Cir. 2005); see also 20 C.F.R. § 404.1520(a)(4)(v).

## DISCUSSION

Plaintiff argues that (1) the ALJ's RFC determination is not supported by substantial evidence, and (2) erred in assessing Plaintiff's credibility. Pl. Mot. at 16-19. The Court concludes that the ALJ's decision was supported by substantial evidence, and properly assessed Plaintiff's testimony.

**I.      ALJ's RFC Determination Is Supported By Substantial Evidence.**

RFC is "the most [a claimant] can still do despite" her "physical and mental limitations." 20 C.F.R. §§404.1545(a); 416.945(a). "[A]n RFC finding is administrative in nature, not

medical, and its determination is within the province of the ALJ." *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 49 n.3 (2d Cir. May 14, 2021) (citing 20 C.F.R. § 404.1527(d)(2)).

"[T]he ALJ must weigh all the evidence to make an [RFC] finding consistent with the record as a whole." *Corbiere v. Berryhill*, 760 F. App'x 54, 57 (2d Cir. 2019). "Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013); *see also Tricarico v. Colvin*, 681 F. App'x 98, 101 (2d Cir. 2017) (same). Supportability, consistency, relationship with the claimant, specialization and other factors are what must be considered when evaluating opinion evidence for claims after March 27, 2017. 20 C.F.R. §§ 404.1527c(c), 416.920c(c).

Plaintiff challenges the ALJ's determination that Ms. Zapata can perform light work. Plaintiff alleges the ALJ "committed legal error" and "improperly substituted his own opinion for that of a physician" by making "an RFC determination in the absence of supporting expert medical opinion[.]" Pl. Mot. at 16. But contrary to Plaintiff's assertion, the ALJ considered the entire record before him, and is entitled to consider "all the relevant medical and other evidence in [the] case record[.]" 20 C.F.R. §§ 404.1520(e), 416.920(e); *see also* §§ 404.1545(a)(3), 416.945(a)(3) (the RFC requires assessment of all relevant evidence in the case record).

In July 2019, Dr. Meyer determined Ms. Zapata could stand or walk for up to four hours total in one-hour intervals in an eight-hour workday. R. at 983. However, Dr. Meyer answered no on his form as to whether claimant's standing/walking, or sitting was affected by impairment. R. at 983. The ALJ determined Dr. Meyer's opinion, regarding claimant's "restriction on standing and walking also is not supported and is contradicted by his statement in that same report that the

15

claimant's ability to stand and walk is not affected." R. at 26. In October 2018, Dr. Meyer had also "cleared [claimant] for more modified duty with less physical exertion [especially] in arms[.]" R. at 819.

The ALJ also considered the consultative examiner, Dr. Nickens's, report that Ms. Zapata could sit, stand, and walk for eight hours at one time during an eight-hour workday. R. at 991. The ALJ found that Dr. Nickens' opinion that there were no objective functional limitations was not "persuasive given the claimant's surgery to her left shoulder and surgery to her neck." Instead, the ALJ found that there were some limitations. R. at 26.

The ALJ considered Dr. Mann's December 2017 report that claimant "may return to light duty work with restrictions of no overhead work" and found it to be persuasive. R. at 581. Dr. Mann did not note any standing or walking restrictions.

Plaintiff next argues the ALJ "erred by failing to properly assess Ms. Zapata's ability to perform work activities on a function-by-function basis before finding her capable of performing work at the light exertional level." Pl. Mot. at 18. However, the Second Circuit has held that "[t]he relevant inquiry is whether the ALJ applied the correct legal standards and whether the ALJ's determination is supported by substantial evidence." *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013). "[R]emand is not necessary merely because an explicit function-by-function analysis was not performed." *Id.* (citations omitted). This is true "[w]here an ALJ's analysis at Step Four regarding a claimant's functional limitations and restrictions affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence such that additional analysis would be unnecessary or superfluous[.]" *Gary J. v. Comm'r of Soc. Sec.*, No. 6:19-CV-1186 (ATB), 2020 WL 2748024, at *7 (N.D.N.Y. May 27, 2020) (citation omitted).

Here, the ALJ considered Dr. Meyer's opinion that Plaintiff could never reach, push, pull and could occasionally feel / handle with her left arm, and determined Dr. Meyer's limitations were not supported by his treatment notes and were inconsistent with the record as a whole. R. at 26, 984. During Dr. Meyer's first treatment of Ms. Zapata in October 2017, he reported "[t]here [was] full rotational motion of the neck in all directions" and "[n]o pain on the extremes of lateral flexion of the neck." R. at 528. In March 2018 after her left shoulder surgery, Dr. Meyer reported Ms. Zapata had "[m]uch less pain" in her left shoulder, her "hands exhibit[ed] a good grip strength" and had no sensory deficit. R. at 515-516. In May 2018, Dr. Meyer reported claimant still had mild tenderness in her neck, and mild pain and some limited motion in her left shoulder. R. at 522. By July 2018, Dr. Meyer cleared Ms. Zapata "to work less active work (ie not as a HH/1 or-CNA with the lifting those jobs entail)." R. at 814. Similarly, in March 2020 Dr. Holt reported claimant had no spasms in her neck and had fluid movement, and had full strength in her shoulder. R. at 1034. Upon consideration of Dr. Meyer's and Dr. Holt's reports, the ALJ properly found Dr. Meyer's statement of Plaintiff's left upper extremities limitations unpersuasive.

Moreover, the claimant has not met her "duty to prove a more restrictive RFC[.]" *Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (summary order) (citing 42 U.S.C. § 423(d)(5)). *See also Barahona v. Kijakazi*, No. 22 CIV. 4007 (SLC), 2023 WL 5622935, at *9 (S.D.N.Y. Aug. 31, 2023) ("The claimant bears the burden to prove that [he] should have a more restrictive RFC than the one assessed by the ALJ.") (internal citation and quotation marks omitted).

Therefore, the ALJ properly considered all of the evidence before him in reaching his decision.

## II.     ALJ Did Not Err In Assessing Plaintiff's Credibility.

"As to a complainant's credibility, the ALJ's task is to consider the extent to which his self-reported symptoms could 'reasonably be accepted as consistent with the objective medical evidence and other evidence of record.'" *Tricarico*, 681 F. App'x at 101 (quoting *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (per curiam) (internal quotation marks omitted)). "As a factfinder, however, the 'ALJ is free to accept or reject testimony' of a witness, provided that when a witness is found not to be credible, the ALJ provides findings with 'sufficient specificity to permit intelligible plenary review of the record.'" *Id.* (quoting *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 260–61 (2d Cir. 1988)). "[T]he ALJ is required to take the claimant's reports of pain and other limitations into account, but is not required to accept the claimant's subjective complaints without question[.]" *Genier*, 606 F.3d at 49 (citations omitted). The ALJ "may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Id. See also Gough v. Saul*, 799 F. App'x 12, 15 (2d Cir. 2020) ("It is well settled that a claimant's subjective evidence of pain is entitled to great weight where . . . it is supported by objective medical evidence.") (citing *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir. 1992)) (internal quotations and ellipsis omitted).

In this case, the ALJ determined "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained below." R. at 22. Plaintiff posits the ALJ "failed to provide any valid explanation in his decision for disregarding Ms. Zapata's testimony." Pl. Mot. at 19. However, the ALJ thoroughly considered Plaintiff's statements about her symptoms and limitations of neck, left shoulder and back pain along with the medical record. The ALJ considered statements from Plaintiff's doctors, which

recommended Plaintiff was able to return to perform light duty work. R. at 21-27, 61-70, 93, 95-97, 581, 814, 819. Plaintiff showed improvements after her neck and left shoulder surgeries. R. at 515-516, 1025, 1049, 1053.

Plaintiff next argues that the ALJ failed to consider side effects Plaintiff experienced as a result of the medication she took. ECF No. 16 at 18-19. An ALJ must consider "[t]he type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms[.]" 20 C.F.R. § 404.1529(b)(3)(iv). The ALJ must discuss this factor if it is pertinent to the evidence presented. In her testimony Plaintiff stated her medication made her sleepy. R. at 49-50. However, other than Plaintiff's testimony, there is no evidence that she reported these side effects to her providers. In *Cecilio E. v. Comm'r of Soc. Sec.*, this Court rejected a similar contention by a plaintiff that the ALJ did not adequately account for the impact of medication side effects when plaintiff failed to report them. No. 1:22-CV-08750-GRJ, 2023 WL 7103304, at *7 (S.D.N.Y. Oct. 27, 2023). "However, Plaintiff does not point to any documented evidence of additional limitation related to side effects and regularly reported that he did not experience side effects." *Id.* Plaintiff thus "points to nothing in the record to support these alleged side effects." *Trancynger v. Comm'r of Soc. Sec.*, 269 F. Supp. 3d 106, 122 (S.D.N.Y. 2017) (dismissing plaintiff's argument when plaintiff noted that most of his medications cause no side effects). As such, remand on the basis of the ALJ's assessment of Plaintiff's credibility is not warranted.

## CONCLUSION

Upon a thorough consideration of the evidence, the Court finds the Commissioner's final decision is supported by substantial evidence and based upon application of correct legal standards.

For the reasons stated above, the Commissioner's motion for judgment on the pleadings is **GRANTED**, Plaintiff's motion for judgment on the pleadings is **DENIED**, and the ALJ's decision is **AFFIRMED**. The Clerk of the Court is respectfully directed to enter judgment and to close this case.

**SO ORDERED.**

**Dated: March 12, 2024**
      **New York, New York**

                                      **ANDREW L. CARTER, JR.**
                                      **United States District Judge**